HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
RACHEL K. LOH (SBN: 300156)
rloh@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Plaintiff SOAProjects, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SOAPROJECTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JAYARAMAN SWAMINATHAN, APPWRAP, LLC, a California Limited Liability Company, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case Number: <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** <br><br> 1. **VIOLATION OF 18 U.S.C. § 1030** <br> 2. **VIOLATION OF CALIFORNIA PENAL CODE § 502** <br> 3. **VIOLATION OF 18 U.S.C. § 1832** <br> 4. **BREACH OF CONTRACT** <br> 5. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.** <br><br> **JURY TRIAL DEMANDED** |

1.      Plaintiff SOAProjects, Inc. ("SOAProjects"), through its attorneys, Dhillon Law Group, Inc., files this Complaint against Jayaraman Swaminathan ("Swaminathan") and AppWrap, LLC ("AppWrap"), to stop Defendants from utilizing SOAProjects's confidential and proprietary



information obtained in violation of the Computer Fraud and Abuse Act and the Defend Trade Secrets Act and related statutes, and to obtain redress for SOAProjects's injuries.  SOAProjects alleges as follows upon personal knowledge and upon information and belief.

**PARTIES**

2. Plaintiff SOAProjects is a California corporation with its principal place of business in Santa Clara County, California.

3. Defendant Swaminathan is an individual, residing in Alameda County, California.

4. Defendant AppWrap is a California Limited Liability Company with its principal place of business in Alameda County, California.

5. Defendants DOES 1 through 10, inclusive, are other parties not yet identified who have engaged in one or more of the wrongful practices alleged herein.  The true names, whether corporate, individual, or otherwise, of Defendants DOES 1 through 10, inclusive, are presently unknown to SOAProjects, which therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when they have been ascertained. Defendants Swaminathan, AppWrap, and DOES 1 through 10, inclusive, will be referred to collectively as "Defendants."

6. SOAProjects is informed and believes and thereon alleges that at all times relevant hereto, each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employer of Swaminathan, and was at all times acting within the scope of such agency, affiliation, alter-ego relationship, and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of SOAProjects's rights and the damages to SOAProjects proximately caused thereby.

**JURISDICTION AND VENUE**

7. This action arises under 18 U.S.C. §§ 1030 and 1832 in relation to the Defendants' unlawful actions. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the related state claims.

8. Venue is proper in the United States District Court for the Northern District of



1  California pursuant to 28 U.S.C. §§ 1391(b)-(c) because the events or omissions giving rise to the
2  claims occurred in this judicial district. Defendant is subject to the Court's jurisdiction within this
3  district because he is a resident of this district, subjecting him to personal jurisdiction. All or most of
4  the events and/or omissions complaint of herein occurred in the city of Mountain View, California.
5  As such, this action is properly assigned to the San Jose Division of the U.S. District Court for the
6  Northern District of California.

## FACTUAL ALLEGATIONS

8  9.  SOAProjects is an advisory firm that provides technical account, internal audit,
9  Sarbanes Oxley Act compliance, Information Technology compliance, risk advisory, forensic, and
10 start-up support services to companies around the world.

### SOAProjects Hires Swaminathan as a Manager

12 10.  Swaminathan was hired by SOAProjects on July 7, 2008 as a Manager, at which time
13 he signed an Employment Agreement ("Agreement"). A copy of the Agreement is attached hereto as
14 Exhibit A.

15 11.  Under the terms of the Agreement, SOAProjects agreed to sponsor Swaminathan's H1-
16 B visa and, eventually, his "green card" or permanent resident status.

17 12.  Under the terms of the Agreement, Swaminathan agreed to hold in strict confidence
18 and not use, except for the benefit of SOAProjects, the confidential information of SOAProjects.
19 Confidential information is defined to include, without limitation, research, product plans, products,
20 services, customer lists, and customers.

21 13.  Beginning in 2012, SOAProjects commenced the process of sponsoring
22 Swaminathan's permanent U.S. resident status application.

23 14.  Approximately six to nine months after SOAProjects began sponsoring Swaminathan's
24 green card, Swaminathan furtively convinced an employee in SOAProjects's Human Resources
25 department to sign a document he needed to carry out his plan, concealed from his employer, of
26 changing his visa from an EB-3 category visa to an EB-2 category visa, claiming that he was hired for
27 his "specialized knowledge," which was false.

28 15.  Swaminathan never informed the management of SOAProjects that he had secretly



Complaint                                                                                          Case No.

changed his own visa status while SOAProjects was filing for Swaminathan's green card.

## Swaminathan Plans to Steal SOAProjects's Trade Secret Data for his own Competitor Company

16. In October 2015, Swaminathan and his wife, Suganya Parthasarathy ("Parthasarathy") filed the articles of organization for AppWrapp, LLC, ("AppWrap").

17. Swaminathan did not disclose AppWrap's existence to SOAProjects, despite the SOAProjects's employee handbook stating that employees "who are pursuing or intend to pursue additional outside employment should disclose such efforts to [SOAProjects] to ensure that there is no conflict of interest."

18. Swaminathan purposefully concealed AppWrap from SOAProjects, listing Parthasarathy as the agent for service of process for AppWrap.

19. AppWrap is a company competing with SOAProjects, with a similar focus.

20. In January 2016, after starting AppWrap, Swaminathan asked for a promotion to Partner. This promotion was granted in January 2016, at which time the managers of SOAProjects were entirely unaware that Swaminathan had started AppWrap several months earlier, while on SOAProjects's payroll.

21. As a Partner with SOAProjects, Swaminathan was provided with access to all of SOAProjects's confidential and proprietary information, including client data, passwords, rates, payment history, and resources.

22. Swaminathan resigned from SOAProjects, effective May 13, 2016, a mere five months after being promoted to Partner and only eight months after furtively founding AppWrap.

23. After Swaminathan's employment terminated, SOAProjects immediately took measures to deactivate all online SOAProjects-owned accounts that Swaminathan used or had access to while working for SOAProjects.

## Swaminathan Unlawfully Accesses and Uses SOAProjects's Trade Secret Data for the Benefit of AppWrap

24. On or around June 4, 2016, approximately three weeks after Swaminathan resigned from SOAProjects, Swaminathan logged into SOAProjects's account with Netsuite, Inc. ("NetSuite"),

1  a Cloud Enterprise Resource Planning vendor, using his deactivated account with his former
2  SOAProjects email address.

3  25.  Swaminathan was able to access this account, despite the account and password having
4  been deactivated, by using the backup security question that he knew as a former partner, to create a
5  new password himself.

6  26.  SOAProjects did not give Swaminathan permission to access its carefully guarded
7  NetSuite account.

8  27.  SOAProjects did not give Swaminathan permission to access the confidential and
9  proprietary information belonging to SOAProjects located in the NetSuite account, which data
10 SOAProjects took pains to keep confidential.

11 28.  Swaminathan unlawfully accessed SOAProjects's confidential and proprietary
12 information that was located in this NetSuite account.

13 29.  The confidential and proprietary information that Swaminathan accessed includes all
14 data related to current and potential clients of SOAProjects, leads on new clients, and client payment
15 history.

16 30.  Upon information and belief, Swaminathan stole and used SOAProjects's confidential
17 and proprietary information for the benefit of himself and of AppWrap.

18 31.  On or about June 7, 2016 and as recently as June 20, 2016, after Swaminathan resigned
19 from SOAProjects, Swaminathan has approached multiple SOAProjects clients about AppWrap, using
20 information he secured during his employment and/or through the theft of data from the NetSuite
21 account following his resignation, to solicit these accounts away from SOAProjects and to AppWrap.

22 32.  On or around June 24, 2016, Swaminathan contacted multiple SOAProjects employees
23 and asked them for confidential and proprietary information, specifically proprietary software code
24 developed by SOAProjects to implement programs for its clients.

25 33.  On May 13, 2016, Swaminathan solicited at least one SOAProjects's employee to
26 terminate his employment with SOAProjects and join AppWrap.

27 34.  As a direct and proximate result of Swaminathan's actions, SOAProjects has been
28 injured and continues to suffer harm.



### FIRST CAUSE OF ACTION
### Computer Fraud and Abuse Act
### (Violation of 18 U.S.C. § 1030)
### Against All Defendants

35. SOAProjects incorporates by reference the foregoing allegations as if fully set forth herein.

36. On or around June 4, 2016, Swaminathan intentionally accessed SOAProjects's protected data storage account with NetSuite for the purpose of obtaining SOAProjects's confidential and proprietary information.

37. Swaminathan did not have authorization or permission to access this account, as Swaminathan was no longer employed by SOAProjects at the time he accessed the NetSuite account on June 4, 2016, and his password had been deactivated following his departure from the company.

38. Swaminathan was aware that he did not have authorization to access this account as he was no longer employed by SOAProjects and his password had been deactivated.

39. Swaminathan utilized backup security questions he had been privy to as a partner at SOAProjects in order to change the password for the NetSuite account.

40. Swaminathan intentionally logged into this account to obtain confidential data about SOAProjects's current and potential clients, leads on new clients, and client payment data – information that was not accessible to individuals not employed by SOAProjects as a partner and which information SOAProjects took great pains to keep confidential.

41. Upon information and belief, Swaminathan has utilized this confidential and proprietary client information for the benefit of himself and AppWrap, and to the detriment of SOAProjects.

42. Swaminathan's actions, as described above, violate 18 U.S.C. § 1030. As a direct and proximate result of Swaminathan's intentional actions, SOAProjects has been injured in an amount to be proven at trial but believed at this time to exceed $1,000,000. SOAProjects demands compensatory relief for Swaminathan's actions.



Complaint                                                                                                                               Case No.

## SECOND CAUSE OF ACTION
### California Comprehensive Computer Data Access and Fraud Act
### (Violation of Cal. Pen. Code § 502)
### Against All Defendants

43. SOAProjects incorporates by reference the foregoing allegations as if fully set forth herein.

44. On or around June 4, 2016, Swaminathan intentionally and knowingly accessed SOAProjects's NetSuite account.

45. Swaminathan, without permission or authorization used the data in SOAProjects's account for the purpose of using the data for the benefit of AppWrap.

46. Swaminathan did not have authorization or permission to access this account, as Swaminathan was no longer employed by SOAProjects at this time and his password had been deactivated.

47. Swaminathan was aware that he did not have authorization to access this account, as he was no longer employed by SOAProjects and his password had been deactivated.

48. Swaminathan utilized backup security questions he had been privy to as a partner at SOAProjects in order to change the password for the NetSuite account.

49. Swaminathan intentionally logged into SOAProjects's confidential NetSuite account to obtain confidential data about SOAProjects's current and potential clients, leads on new clients, and client payment data.

50. Swaminathan actions, as described above, violate Cal. Penal Code § 502, *et seq.*, which provides for civil remedies under Cal. Pen. Code § 502(e)(1).

51. Upon information and belief, Swaminathan's unlawful conducted alleged herein is continuing, and there is no indication that Swaminathan will refrain from continuing such activity in the future.  If Swaminathan is not enjoined from the conduct set forth in this Complaint, he will continue to violate California law and injure SOAProjects.

52. As a direct and proximate result of Swaminathan's intentional actions, SOAProjects has been injured in an amount to be proven at trial but believed at this time to exceed $1,000,000. SOAProjects demands compensatory damages, exemplary damages, injunctive relief, and attorney's fees and costs.



### THIRD CAUSE OF ACTION
### Theft of Trade Secrets
### (Violation of 18 U.S.C. § 1832, *et seq.*)
### Against All Defendants

53. SOAProjects incorporates by reference the foregoing allegations as if fully set forth herein.

54. On or around June 4, 2016, Swaminathan intentionally and knowingly accessed SOAProjects's account with NetSuite.

55. SOAProjects's account with NetSuite contained trade secret data regarding potential clients and current clients.

56. The data contained in SOAProjects's NetSuite account was information which derived independent economic value by not being generally known to the public and was subject to reasonable efforts to maintain its secrecy. SOAProjects's NetSuite account was password protected, and the passwords were changed promptly after Swaminathan terminated his employment.

57. Swaminathan did not have authorization or permission to access the data in the NetSuite account, as Swaminathan was no longer employed with SOAProjects at this time and the passwords had been changed.

58. Swaminathan was aware that he did not have authorization to access the data in the NetSuite account as he was no longer employed by SOAProjects and his password had been deactivated.

59. Swaminathan utilized backup security questions he had been privy to as a partner at SOAProjects in order to change the password for the NetSuite account.

60. Swaminathan intended to use the trade secret data about SOAProjects's current and potential clients, leads on new clients, and client payment data for the economic benefit of AppWrap.

61. Swaminathan actions, as described above, violate 18 U.S.C. § 1832, *et seq.*, which provides for civil remedies under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

62. Upon information and belief, Swaminathan's unlawful conducted alleged herein is continuing, and there is no indication that Swaminathan will refrain from continuing such activity in the future. If Swaminathan is not enjoined from the conduct set forth in this Complaint, he will continue to violate federal law.

63. As a direct and proximate result of Swaminathan's willful and malicious actions, SOAProjects has been injured in an amount to be proven at trial. SOAProjects demands compensatory damages, exemplary damages, disgorgement of profits, injunctive relief, and attorney's fees.

### FOURTH CAUSE OF ACTION
### Breach of Contract
### Against Defendant Swaminathan

64. SOAProjects incorporates by reference the foregoing allegations as if fully set forth herein.

65. When he was hired on July 7, 2008, Swaminathan signed the Agreement.

66. Under the Confidentiality provision of the Agreement, Swaminathan agreed to enter into a Confidentiality Agreement whereby he agreed, at all times during his employment and thereafter, to not use, except for the benefit of SOAProjects, any of SOAProjects's confidential and proprietary information, including customer lists, customers, research, product plans, or services.

67. Swaminathan breached the confidentiality provision by knowingly accessing SOAProjects's account without authorization, and by utilizing SOAProjects's confidential and proprietary client data for his and AppWrap's benefit.

68. Upon information and belief, Swaminathan's unlawful conducted alleged herein is continuing, and there is no indication that Swaminathan will refrain from continuing such activity in the future. If Swaminathan is not enjoined from the conduct set forth in this Complaint, he will continue to violate California law.

69. As a direct and proximate result of Swaminathan's breaches of the Agreement, SOAProjects has been injured in an amount to be proven at trial but believed to exceed $1,000,000. SOAProjects demands compensatory damages and injunctive relief.

### FIFTH CAUSE OF ACTION
### Unfair Competition
### (Violation of Cal. Bus. & Prof. Code § 17200, *et seq*.)
### Against All Defendants

70. SOAProjects incorporates by reference the foregoing allegations as if fully set forth herein.

Complaint                                                                                                        Case No.

71. The California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, et seq., defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.

72. The UCL "borrows violations" from other statutes, state or federal, and authorizes any person who has suffered injury in fact and who has lost money or property as a result of such unfair competition to bring an action for relief under the statute. The UCL also provides that a court may enjoin acts of unfair competition, issue declaratory and other equitable relief, and order restitution of money or property acquired by means of unfair competition.

73. Swaminathan engaged in unlawful conduct, violating both California and federal law, including, without limitation, the Computer Fraud and Abuse Act, the California Comprehensive Computer Data Access and Fraud Act, and 18 U.S.C. § 1382.

74. While employed with SOAProjects, Swaminathan also pursued employment outside of SOAProjects that created a direct conflict of interest with SOAProjects's business. Swaminathan purposefully concealed the information about AppWrap from SOAProjects despite the SOAProjects's handbook clearly indicating the employees should disclose such information to ensure there was no conflict of interest.

75. Swaminathan's acts and practices as described in this Complaint constitute unlawful and unfair business practices and unfair competition within the meaning of the UCL.

76. As a direct and proximate result of the aforementioned acts, Defendants received and continue to hold ill-gotten gains belonging to SOAProjects.

77. Upon information and belief, Swaminathan's unlawful conducted alleged herein is continuing, and there is no indication that Swaminathan will refrain from continuing such activity in the future. If Swaminathan is not enjoined from the conduct set forth in this Complaint, he will continue to violate California Law.

78. California Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition and order disgorgement of all profits gained by Defendants through operation of the practices alleged herein. Such amount is to be proven at trial.



## PRAYER FOR RELIEF

WHEREFORE SOAProjects prays for the following relief:

1. Compensatory damages;

2. Exemplary damages;

3. An injunction requiring Swaminathan to return SOAProtjects's confidential and proprietary information, to cease using SOAProjects's confidential and proprietary information, to cease soliciting SOAProjects's employees, and to cease attempting to engage SOAProjects's clients;

4. Disgorgement of profits gained by Swaminathan through his unfair and unlawful competition;

5. An award of reasonable attorney's fees and costs; and

6. For such other and further relief as the Court may deem equitable and appropriate.

## JURY DEMAND

SOAProjects requests a trial by jury of all claims that may be so tried.

Dated:  July 14, 2016                    DHILLON LAW GROUP INC.

                                        By:   /s/ Harmeet K. Dhillon
                                              Harmeet K. Dhillon
                                              harmeet@dhillonlaw.com
                                              Rachel K. Loh
                                              rloh@dhillonlaw.com
                                              DHILLON LAW GROUP INC.
                                              177 Post Street, Suite 700
                                              San Francisco, California 94108
                                              Telephone: (415) 433-1700
                                              Facsimile: (415) 520-6593

                                              Attorneys for Plaintiff SOAProjects, Inc.

